Carmichael *v.* Snodgrass.

---

Nancy Carmichael *et al. v.* Elmira Snodgrass *et al.*

1. Chancery Pleadings and Practice. *Bill of review.* A bill of review for newly discovered evidence cannot be sustained which relies upon evidence merely cumulative, and fails to show any sufficient reason why it was not procured on the first trial.

2. Same. *Same.* An original bill in the nature of a bill of review, contains no equity which admits that the party on whose behalf relief is sought was represented by counsel in the suit sought to be reviewed, made the defense relied on, and merely avers that he was aged, diseased and infirm, not physically able to look after his interests, nor mentally capable of attending to his case, understanding the contro-

versy, or transacting business of any importance, and suggests that the defense was not properly managed, by reason of the delicate position of the counsel in appearing at the same time for a co-litigant, who might be injuriously affected by the establishment of the defense.

3. SAME. *Judgments.* The solemn judgments of the court, after contested litigation, cannot be interfered with except upon the plainest averments of fact.

FROM WHITE.

Appeal from the Chancery Court at Sparta. W. G. CROWLEY, Ch.

H. DENTON and J. H. SAVAGE for complainant.

E. L. GARDENHIRE and THOS. & D. L. SNODGRASS for defendant.

COOPER, J., delivered the opinion of the court.

The chancellor refused to allow this bill to be filed as a bill of review for newly discovered evidence, and dismissed it, on motion, for want of equity on its face. The complainants appealed.

In the year 1865, Elmira Snodgrass, as the administratrix of David Snodgrass, deceased, filed her attachment bill against John H. Carmichael, to hold him liable as one of the sureties of Richard Bradley on a claim for about $1,300, and to subject the property attached to the satisfaction of the recovery thereon. Carmichael answered the bill, appearing, by regular solicitors of the court, and relied, among other defenses, upon a plea of *non est factum* to the note sued on. Some proof was taken upon the issues made, and such proceedings were had in the cause that in 1872 the

chancellor held that Carmichael had executed the note, and ordered the land attached to be sold in satisfaction of the decree rendered against him. Carmichael appealed to this court, where the decree was affirmed in January, 1874, and the cause remanded for the execution of the decree. Carmichael died in June, 1874.

The present bill was filed in April, 1875, by the heirs of John H. Carmichael, to enjoin the execution of the decree. The bill was filed without leave of the court, but upon motion of the defendants to dismiss it for want of equity and because leave of the court had not been obtained, the complainants applied for the necessary permission. One object of the bill as framed was to again contest the question of the genuineness of Carmichael's signature to the note originally sued on, upon the evidence of certain witnesses whose affidavits were attached to the bill. But the evidence was merely cumulative, and no reason was shown why it was not had in the previous case. The chancellor was, therefore, right in refusing leave to file the bill on this ground.

It is now argued, however, that the bill is an original bill to set aside the former decree, upon the ground of the mental incapacity of Carmichael during the pendency of the suit. The allegations of the bill on this point are these: "That he was not mentally capable of transacting business of any importance; that he was not only physically but mentally unable to attend, to conduct and manage his defense to said suit; that he was not mentally capable of managing his defense to said suit, and of understanding what was

necessary for him to prove, or as to what was the real question involved in said controversy; that from his diseased, aged and infirm condition he was physically unable to look after his interest in said suit, if he had had sufficient mental capacity to have understood what was necessary."

The substance of these allegations is, that the ancestor of complainants was aged, diseased and infirm, not physically able to look after his interests, nor mentally capable of attending to his case, understanding the controversy, or transacting business of any importance. Such statements might include a large class of old men of waining faculties and feeble health. It has never been supposed that such men were incapable of employing an attorney, or were expected to attend to the progress of a lawsuit, or supervise its details. If mental incapacity can be allowed to affect the judgment of judicial tribunals, where the party has been represented by counsel, it must assuredly be that degree of incapacity which renders the party legally *non compos mentis*, not mere weakness of body or mind unconnected with any other ground of equity. And it is doubtful whether absolute incapacity, to the extent of lunacy or idiocy, would be sufficient, when the party was represented by counsel and the cause fairly conducted: *McDowell* v. *Merrell*, at Knoxville, September term, 1880.

The bill states that the solicitors and counsel who represented Carmichael in the original suit were also the counsel for Bradley, the principal debtor, who was implicated by the proof in the forgery of Carmichael's

name, if it was a forgery; and that the defense was not properly managed by reason of the delicate position of the counsel. It is obvious, however, that the sanctity of judicial proceedings cannot be brought in question by a mere suggestion, from which the court is asked to infer something wrong. There must be positive averments of facts, from which the court can see that fraud or wrong actually intervened. The solemn judgments of the court, after contested litigation, cannot be interfered with except upon the plainest averments of fact.

There is no such case of fraud made out by this bill as would justify the interference of the court, and the chancellor's decree must be affirmed with costs.